*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 7, 2016            521333
_____

ONEWEST BANK, FSB,

                    Appellant,

        v
                                           MEMORANDUM AND ORDER

LISA M. SMITH,

                    Respondent,
                    et al.,
                    Defendants.

_____

Calendar Date:  November 17, 2015

Before:  Lahtinen, J.P., Garry, Rose, Lynch and Devine, JJ.

                    _____


        Hogan Lovells US LLP, New York City (Chava Brandriss of
counsel), for appellant.

        Wapner Koplovitz & Futerfas, PLLC, Kingston (Joshua N.
Koplovitz of counsel), for respondent.

                    _____


Devine, J.

        Appeal from an order of the Supreme Court (Mott, J.),
entered September 16, 2014 in Ulster County, which, among other
things, granted defendant Lisa M. Smith's cross motion for
summary judgment dismissing the complaint against her.

        Defendant Lisa M. Smith (hereinafter defendant) is the
owner of real property in the Town of Woodstock, Ulster County
and, in 2009, she borrowed over $320,000 from a subsidiary of
plaintiff that was secured by a home equity conversion mortgage,
more commonly known as a reverse mortgage, on that property (see
e.g. 12 USC § 1715z-20 [b] [3]; Banking Law § 6-h).   Reverse
mortgages are designed to allow elderly homeowners to borrow

money against the accumulated equity in their homes and, unlike traditional mortgages, "the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur" (Bennett v Donovan, 703 F3d 582, 584-585 [DC Cir 2013]). The triggering event generally involves the death of the borrower or the sale of the home, but the note and mortgage here create a trigger where "[a]n obligation of the borrower under the mortgage is not performed" and defendant Secretary of Housing and Urban Development (hereinafter the Secretary) approves of requiring immediate payment in full (24 CFR 206.27 [c] [2] [iii]).

Defendant was obliged under the terms of the loan documents to maintain hazard insurance on the property and, after she failed to pay the insurance premiums, plaintiff advanced them on her behalf (see 24 CFR 206.27 [b] [2], [6]). Plaintiff deemed the failure of defendant to make the payments to be a triggering event under the note and mortgage and, after defendant failed to repay the advances, the present action to foreclose on the mortgage ensued. Defendant answered and asserted several affirmative defenses, including that plaintiff had failed in various ways to comply with requirements for reverse mortgages set forth by the federal Department of Housing and Urban Development. Plaintiff then moved for summary judgment, prompting defendant to respond with a cross motion for summary judgment or, alternatively, leave to serve an amended answer. Supreme Court granted summary judgment to defendant, and plaintiff now appeals.

Defendant was obliged to "pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments" under the terms of the loan documents (24 CFR 206.205 [a]), and those documents contemplate that foreclosure is an available remedy for her failure to perform such an obligation (see 24 CFR 206.27 [b] [6]; [c] [2] [iii]).[1] Supreme Court nevertheless held that plaintiff was

---

[1] Plaintiff made the reverse mortgage loan here "in conformity with applicable federal laws and regulations specifically regulating reverse mortgage loans" and, as such, the

precluded from seeking foreclosure by 24 CFR 206.205 (c), which provides that "[i]f the mortgagor fails to pay the property charges in a timely manner, and has not elected to have the mortgagee make the payments, the mortgagee may make the payment for the mortgagor and charge the mortgagor's account" (emphasis added).  Language such as "may" should ordinarily be read as permissive, "and mandatory effect is given to [it] only when required by the context of the [regulation], the facts surrounding its [promulgation], or the purposes sought to be served thereby" (McKinney's Cons Laws of NY, Book 1, Statutes § 177 [b]).  The context of 24 CFR 206.205 gives no reason to believe that mandatory effect should be afforded to its discretionary language and, contrary to the conclusion of Supreme Court, neither does the purpose underlying the federal regulatory scheme.  The scheme in question is intended to enable the Secretary to provide insurance for reverse mortgages that will facilitate the offering of such mortgages to elderly homeowners by lenders which, in turn, will allow the homeowners to monetize their accumulated home equity (see 12 USC § 1715z-20 [a]; 24 CFR 206.1).  This actual goal runs against an interpretation of the regulation that would prevent a mortgagee from pursuing whatever permissible remedy it deems appropriate to recover unpaid carrying costs and, indeed, adopting that reading could well have a chilling effect on the willingness of lenders to offer reverse

_____

loan "shall be deemed to conform to the requirements of [Real Property Law § 280-a] unless such reverse mortgage loan fails to conform to such rules and regulations as the [S]uperintendent of [F]inancial [S]ervices has expressly declared to be neither preempted by, nor otherwise inconsistent with[,] such federal laws or regulations" (Real Property Law § 280-a [4]; see Banking Law § 6-h).  Defendant asserts that the loan here does not comply with certain requirements set forth by Real Property Law § 280-a but, to the extent that assertion is properly before us, the declaration of inconsistency that would render those requirements applicable has not been made by the state Superintendent of Financial Services (see 3 NYCRR 79.1 [c]; 79.14; Dept of Financial Servs Banking Interpretation RE: Banking Law § 6-h, General Regulations Part 79, Reverse Mortgages [Feb. 8, 2008], http://www.dfs.ny.gov/legal/interpret/lo080208.htm).

mortgages.  We therefore read 24 CFR 206.205 (c) as allowing, but not requiring, plaintiff to pay carrying charges owed by defendant rather than resorting to foreclosure (but see Metlife Home Loans v Vereen, 43 Misc 3d 537, 541 [2014]).

Defendant's remaining arguments, to the extent that they are properly before us, do not provide an alternative basis for upholding the grant of her cross motion insofar as it sought summary judgment dismissing the complaint.  Nonetheless, we do not agree with plaintiff's further contention that its motion for summary judgment should have been granted.  The loan documents impose a condition precedent that plaintiff obtain "approval of the Secretary" prior to accelerating the loan and commencing a mortgage foreclosure action.  Plaintiff submitted the affirmation of its attorney indicating that it had obtained such approval, but the attorney based those representations upon documents relating to an entirely different borrower and loan.  Plaintiff thus failed to make a prima facie showing that it was entitled to foreclose upon the mortgage, which "required the denial of its motion [for summary judgment], regardless of the sufficiency of the . . . opposition papers" (Nationstar Mtge., LLC v Dimura, 127 AD3d 1152, 1153 [2015]; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; compare Community Bank, N.A. v Naito, 118 AD3d 1181, 1181-1182 [2014]).

Lahtinen, J.P., Garry, Rose and Lynch, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant Lisa M. Smith's cross motion for summary judgment; said cross motion denied; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court